UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANKLIN KUZENSKI,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>UPROXX LLC,<br><br>　　　　　Defendant. | Case No. 2:23-cv-00945-WLH-AGR<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT [37]** |

Before the Court is Defendant Uproxx LLC's ("Defendant") Motion to Dismiss Plaintiff's First Amended Complaint ("FAC") (the "Motion"), dated August 24, 2023, against Plaintiff Franklin Kuzenski ("Plaintiff"), on behalf of himself and all others similarly situated. (Mot. to Dismiss, Docket No. 37). On September 22, 2023, Plaintiff filed an Opposition brief (the "Opposition") to Defendant's Motion. (Opp'n, Docket No. 43). On October 6, 2023, Defendant subsequently filed a Reply brief (the "Reply"). (Reply, Docket No. 45). This matter is fully briefed.

On October 20, 2023, the Court held a hearing and heard oral arguments from all parties.

After considering the parties' arguments and submitted evidence, and for the reasons stated below, the Court **GRANTS** Defendant's Motion without prejudice and with leave to amend. Plaintiff shall file an amended complaint consistent with this

Order within 21 days of its issuance.

## I. BACKGROUND

Defendant is a digital media company that develops, owns, and/or operates a news and culture website located at www.uproxx.com (the "Website"). (FAC, Docket No. 36 ¶ 12; *see also* Uproxx Editorial Guidelines, https://uproxx.com/uproxx-editorial-guidelines (last visited Oct. 18, 2023)).[1]

Defendant's Website contains news articles and video content. (Docket No. 36 ¶ 13). Plaintiff alleges that the Website is "significantly tailored to provide a wide array of prerecorded video content, which constitutes a significant component of Defendant's published media." (*Id.*; *see also* Opp'n, Docket No. 43 at 1). Users may subscribe to Defendant's Website by "using their Facebook or Twitter profile, or by creating a display name and providing their email address."[2] (Docket No. 36 ¶ 16). Among other things, subscribers receive benefits including a unique user profile with a custom avatar, the ability to interact and communicate with other subscribers, earn badges and rewards, and receive "recurring emails from Defendant with links to articles and videos published to the Website."[3] (*Id.* ¶¶ 21–22).

---

[1] Both parties contend that the Court may consider the Website and its contents for this Motion because it is incorporated by reference in the FAC. Specifically, the FAC contains a link to the Website, refers to the Website extensively throughout, and describes several aspects of the Website. (*See* Docket No. 37 at n.3; *see also* Docket No. 43 at n.1). The Court agrees. The Court will take judicial notice of the Website for the limited purpose of acknowledging its existence and that its content is publicly available but will not take judicial notice of the truth of its content. *See Spy Optic, Inc. v. Alibaba.Com, Inc.*, 163 F. Supp. 3d 755, 763 (C.D. Cal. 2015) (finding that a court "may take judicial notice of the fact that an internet article is available to the public, but they may not take judicial notice of the truth of the matters asserted…."). The Court also takes into consideration, where relevant, that the Website may have looked different during the relevant time period.

[2] The Court notes that Facebook and Twitter are now known as Meta and X, respectively. To avoid confusion, the Court will refer to the companies' former names, as they are named in the FAC.

[3] Plaintiff contends that during the relevant time period, the Website invited users to "subscribe" or become "members," whereas now the Website invites users to become "followers." In the Courts view, this is a distinction without a difference.

Plaintiff is an individual who since September 2019 has been subscribed to Defendant's Website. (Docket No. 36 ¶¶ 6, 47). Plaintiff alleges that Defendant's Website contains a "code analytics tool" called "Facebook Pixel," which "tracks the actions of Website visitors (subscribers), such as the pages a visitor accesses and the content they view." (*Id.* ¶ 25). The purpose of this tool is to monetize Defendant's Website in order to "knowingly collect[] and disclose[] its subscribers' [personally identifiable information ("PII")] to Facebook, namely data that personally identifies subscribers and the videos they view." (*Id.* 25). Specifically, "[w]hen someone watches a video on Defendant's Website, the video name and the viewer's [Facebook ID ("FID")] are simultaneously sent to Facebook via Facebook Pixel." (*Id.* ¶ 26). Facebook Pixel captures the URL of the video and the user's FID and discloses "c_user" cookie information. (*Id.*). An example is provided below:

```
+ cookie:           datr=zlyfYUt2d5tlTdh5orgAJK5d; dpr=1.25;
                    sh=3lyfYcxYFYiIagxSjmednKHd;
                    c_user=100██████████; xs=7%3AFsYqHNgeh-
                    UH1A%3A2%3A163783450 %3A-1%3A15115;
                    fr=0YZacwLR0i1mpNmoU.AWUK84V_cUoRrBTzUV2awu
                    1sjxg.Bhn1zO.T5.AAA.0.0.Bhn18K.AWXJtaQfOxY
+ host:             www.facebook.com
+ origin:           https://uproxx.com
+ referer:          https://uproxx.com/
  sec-ch-ua:        " Not A;Brand";v="99", "Chromium";v="96",
                    "Google Chrome";v="96"
  sec-ch-ua-mobile: ?0
  sec-ch-ua-
  platform:         "Windows"
+ sec-fetch-dest:   iframe
+ sec-fetch-mode:   navigate
+ sec-fetch-site:   cross-site
+ upgrade-insecure- 1
  requests:
+ user-agent:       Mozilla/5.0 (Windows NT 10.0; Win64; x64)
                    AppleWebKit/537.36 (KHTML, like Gecko)
                    Chrome/96.0.4664.45 Safari/537.36

                                           2.5 kB   Text ∨   REQUEST BODY

1  id=1853083501571805&ev=Microdata&dl=https%3A%2F%2Fuproxx.
   com%2Fshows%2Fuproxx-sessions%2Fbluebucksclan-she-busy%2F&
   rl=https%3A%2F%2Fuproxx.com%2Fshows%2F&if=false&ts=1637834625406&
   cd%5BDataLayer%5D=%5B%5D&
   cd%5BMeta%5D=%7B%22title%22%3A%22BlueBucksClan+%E2%80%93
   +%E2%80%9CShe+Busy%E2%80%9D+%E2%80%93+UPROXX%22%7D&
```

(*Id.* ¶ 29). Plaintiff alleges that after watching videos contained on Defendant's Website while being logged into his Facebook account on the same device and/or

browser, Defendant disclosed his PII to Facebook including the URL of the video that he accessed and his FID. (*Id.* ¶¶ 30, 50). Plaintiff further alleges that he did not consent to the disclosure of his PII and was not given the opportunity to opt out from such disclosures. (*Id.* ¶ 54).

On February 8, 2023, Plaintiff brought this class action lawsuit, on behalf of himself and others similarly situated, alleging a single cause of action under the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710. (Compl., Docket No. 1). On August 10, 2023, Plaintiff filed its FAC, the operative complaint. (Docket No. 36). On August 24, 2023, Defendant filed the instant Motion. (Docket No. 37). Plaintiff filed its Opposition on September 22, 2023 (Docket No. 43), and Defendant subsequently filed its Reply on October 6, 2023. (Docket No. 45).

## II. LEGAL STANDARD

Under Fed. R. of Civ. P. 12(b)(6), a party may move to dismiss a cause of action for failure to state a claim upon which relief can be granted. A complaint may be dismissed for failure to state a claim for one of two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). To fulfill this requirement, a complaint must meet the notice pleading standards of Rule 8(a). Fed. R. Civ. Proc. 8(a). That is, a complaint "may not simply recite the elements of a cause of action but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Rule 8(a), however, "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence." *Twombly*, 550

U.S. at 545. The court must construe the complaint in the light most favorable to the plaintiff, accept all allegations of material fact as true, and draw all reasonable inferences from well-pleaded factual allegations. *Gompper v. VISX, Inc.*, 298 F.3d 893, 896 (9th Cir. 2002). The court is not required to accept as true legal conclusions couched as factual allegations. *See Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

Pursuant to Fed. R. Civ. P. 15(a)(2), courts granting dismissal should freely give leave to amend "when justice so requires." Courts apply this policy with "extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990); *see also Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (holding that dismissal with leave to amend should be granted even if no request to amend was made). Courts consider four factors in determining whether to grant leave to amend: (1) undue delay; (2) bad faith; (3) futility of amendment; and (4) prejudice to the opposing party. *United States v. Webb*, 655 F.2d 977, 980 (9th Cir. 1981) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

**III.  DISCUSSION**

Congress enacted the VPPA in 1988 to prohibit a "video tape service provider" from "knowingly disclosing" PII about its "consumers." 18 U.S.C. § 2710(b). The purpose of the act was "[t]o preserve personal privacy with respect to the rental, purchase or delivery of video tapes or similar audio visual materials." S. Rep. 100-599 at 1 (1988); *see also Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015) (providing a historical overview of the statute and its purpose). The act accomplished this goal by "allow[ing] consumers to maintain control over personal information

divulged and generated in exchange for receiving services from video tape service providers." S. Rep. 100-599 at 8. Thus, underlying the act is the principle "that protection is merited when the consumer lacks control over the dissemination of the information at issue." *Netflix*, 795 F.3d at 1065–66.

In order to bring a claim under the VPPA "a plaintiff must allege that (1) a defendant is a 'video tape service provider,' (2) the defendant disclosed 'personally identifiable information concerning any customer' to 'any person,' (3) the disclosure was made knowingly, and (4) the disclosure was not authorized by section 2710(b)(2)." *Id.* at 1066. Notably, the VPPA only applies to "consumers" as it is defined within the VPPA. *See* 18 U.S.C. § 2710(a)(1).

### A. Subscriber Under VPPA

As a threshold matter, Defendant argues that the VPPA does not apply to Plaintiff because Plaintiff is not a "consumer" as defined under the VPPA. (Docket No. 37 at 5–8). The VPPA defines "consumer," as "any renter, purchaser, or *subscriber* of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1) (emphasis added). The VPPA, however, does not define "subscriber," and the Ninth Circuit is silent as to its meaning in this statute. Given the lack of controlling caselaw, the parties cite to a myriad of district court cases that support their competing interpretations of "subscriber." *Compare e.g. Carter v. Scripps Networks, LLC*, No. 22-cv-2031 (PKC) --- F.Supp.3d ----, ----, 2023 WL 3061858 at *6–7 (S.D.N.Y. Apr. 24, 2023) (holding that plaintiffs' subscription to HGTV's newsletter did not enable the plaintiffs to sue regarding videos on the defendant's website where the complaint did not allege that the plaintiffs' "status as newsletter subscribers was a condition to accessing the site's videos, or that it enhanced or in any way affected their viewing experience.") *with Harris v. Pub. Broad. Serv.*, No. 1:22-cv-02456-MLB, --- F.Supp.3d ----, 2023 WL 2583118 (N.D. Ga. Mar. 20, 2023) (denying motion to dismiss in similar VPPA claim where plaintiff signed up for PBS.org account, which required her to provide her name, email address, zip code, IP

address, and account cookies).

Absent controlling authority, several district courts in California have applied the Eleventh Circuit's definition of "subscription," which requires "some type of commitment, relationship, or association (financial or otherwise) between a person and an entity." *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1256 (11th Cir. 2015) (internal quotation marks omitted) (finding that a user who downloaded and used the Cartoon Network's free mobile application on their smartphone to view freely available content, without more, is not a "subscriber," and therefore not a "consumer," under the VPPA); *see also Perry v. Cable News Network, Inc.*, 854 F.3d 1336, 1342 (11th Cir. 2017) (relying on *Ellis* in finding that plaintiff who downloaded and used CNN's free mobile application lacked the relationship required to make him a subscriber under VPPA because he did not provide CNN any personal information, make payments through the application to CNN, or engage in any other commitment or relationship that would allow him to have access to exclusive or restricted content). The *Ellis* court enumerated a non-exhaustive list of six factors, which if exist, are indicative of a "subscriber" relationship: "payment, registration, commitment, delivery, [expressed association,] and/or access to restricted content." *Id.* (citation omitted).[4] In that case, the court analyzed the six factors and concluded plaintiff was not a subscriber within the meaning of the VPPA because among other things, he had not created an account with the Cartoon Network, did not provide any personal

---

[4] The First Circuit in *Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 489 (1st Cir. 2016), is the only other circuit to define "subscriber" under the FPPA. In *Yershov*, the First Circuit found that a user of the *USA Today* mobile application was a "subscriber," within meaning of VPPA because while the user paid no money, access required the plaintiff to provide "personal information, such as [plaintiff's] Android ID and [] mobile device's GPS location at the time [plaintiff] viewed a video, [and] each linked to his viewing selections." While the First Circuit disagreed with the holding of *Ellis*, it acknowledged that a "subscription" involved a relationship between the parties that was "materially different from what would have been the case" had the plaintiff not subscribed. *Id.* This Court declines to follow *Yershov*, and instead follows the numerous district cases that elect to follow *Ellis*.

information, make payments to the network, or otherwise make a commitment with the network that would have given him access to exclusive or restricted content. *Ellis*, 803 F.2d at 1257.

Notably, in addition to the *Ellis* factors, several courts have reasoned, based on the plain reading of the statute, that to be a "subscriber" the plaintiff must also allege the "existence of a factual nexus or relationship between the subscription provided by the defendant and the defendant's allegedly actionable video content." *Tawam v. Feld Ent. Inc.*, No. 23-CV-357-WQH-JLB, 2023 WL 5599007, at *5 (S.D. Cal. July 28, 2023) (finding that user who viewed two videos on website, which promoted monster truck events, and then subsequently signed up for mailing list were not "subscribers" under VPPA because of lack of nexus); *see also Hunthausen v. Spine Media, LLC*, No. 3:22-CV-1970-JES-DDL, 2023 WL 4307163, at *3 (S.D. Cal. June 21, 2023) ("In the statute's full context, a reasonable reader would understand the definition of "consumer" to apply to a renter, purchaser or subscriber of audio-visual goods or services, and not goods or services writ large"); *see also Jefferson v. Healthline Media, Inc.*, No. 3:22-cv-05059-JD, ---, F.Supp. 3d ----, 2023 WL 3668522, at *3 (N.D. Cal. May 24, 2023) (finding that the scope of "subscriber" is limited to subscribers of "goods or services" from a video tape service provider based on a plain reading of VPPA, and thus plaintiff's allegation that it was a subscriber to Healthline's website newsletter was not a "good[] or service[]").

Here, Plaintiff alleges that he became a "subscriber" as defined under the VPPA of Defendant's Website because he signed up for an account and received several benefits including a unique user profile with a custom avatar, the ability to interact and communicate with other subscribers, earn website specific badges and rewards, and receive "recurring emails from Defendant with links to articles and videos published to the Website." (*Id.* ¶¶ 21–22). Further, because Plaintiff was logged into his Facebook account on the same device/browser, every time Plaintiff accessed a video, the Website captured via Facebook Pixel, Plaintiff's URL and FID and

transmitted it to Facebook. (*Id.* 26–33). The Court finds that these allegations are insufficient to allege that Plaintiff is a "subscriber" as defined under the VPPA.

Under the *Ellis* factors, Plaintiff only satisfies at most two factors: registration and express association. Plaintiff does not allege that any of the other *Ellis* factors are present such as paying for his subscription or receiving access to exclusive video content as a result of the subscription.[5] More importantly, Plaintiff's FAC fails to allege a factual nexus or relationship between the subscription (i.e., Website benefits) and the Defendant's allegedly actionable video content. *See e.g., Gardener v. MeTV*, No. 22 CV 5963, 2023 WL 4365901, at *4 (N.D. Ill. July 6, 2023) ("The Court does not agree, however, with Plaintiffs' argument that the allegations that [they] opened an account separate and apart from viewing video content on MeTV's website is sufficient to render them 'subscribers' under the Act."); *see also Carter*, ---- F.Supp.3d at ----, 2023 WL 3061858, at *6 (stating that "a customer's non-video transactions play no part in a defendant's liability under the VPPA").

Plaintiff argues that he "is a subscriber to Defendant's entire website, of which a large focus is audio visual materials" and thus the benefits from his subscription (i.e. the social media functions) enhance and affect his viewing of video materials.

---

[5] During oral arguments, Plaintiff's counsel argued that at least four of the *Ellis* factors were sufficiently alleged or can be reasonable inferred in the FAC. The Court disagrees. Although the Court has made several reasonable inferences, the FAC as drafted, requires the Court to make one inference too many to support Plaintiff's reading. Rather than relying on its reasonable inferences to satisfy the other *Ellis* factors, Plaintiff should simply add those allegations to its amended complaint. For example, Plaintiff argues that he provided his personal information including his e-mail address to Defendant. This claim is not directly contained in the FAC. Instead, the FAC alleges generally that a user may subscribe by using either a social media account through Facebook or Twitter, or in the alternative, may use a display name and provide an e-mail. The FAC then contains several e-mails from Defendant related to the subscription process. The FAC does not allege that Plaintiff provided Defendant an e-mail address, a username, or any other personal information. The Court is left to guess and assume these facts. Plaintiff's counsel argued that the Court could reasonably infer based on the e-mails affixed to its submissions that Plaintiff must have provided an e-mail address to receive such e-mails. The Court declines to do so.

9

(Docket No. 43 at 6). The Court finds this argument unavailing. Nowhere in the FAC does Plaintiff allege that becoming a subscriber is connected in any way to Defendant's video content. Rather, the facts alleged indicate that becoming a subscriber provides a user with social media type benefits, such as a user profile, avatars, and ability to communicate with other users—not access to videos. In fact, the word "video" does not appear anywhere in the subscriber benefits message cited by Plaintiff in his FAC. (*See* Docket No. 36 ¶ 21). While Plaintiff does allege that subscribers receive an e-mail containing links to videos, this alone is insufficient as the videos are not alleged to be exclusive to subscribers and can be accessed by anyone visiting Defendant's Website.[6] *See e.g. Carter*, --- F.Supp.3d at ----, 2023 WL 3061858, at *6 ("the Complaint does not include facts that plausibly allege that their status as newsletter subscribers was a condition to accessing the site's videos, or that it enhanced or in any way affected their viewing experience."). Further, a link to a video from Defendant's Website does not create a subscription relationship because any user can access the video on the Website. Accordingly, the FAC does not plausibly allege a VPPA claim.

### B. Elements of VPPA Claim

Defendant separately contends the FAC fails to sufficiently allege at least three of its required elements including that: (1) Defendant did not disclose Plaintiff's PII; (2) even if it did, Defendant did not do so knowingly; and (3) Defendant is not a "video service provider" as defined under the VPPA. (*Id.*) The Court declines to address these arguments. As discussed above, the issue of whether Plaintiff is a "consumer" under the VPPA is a threshold issue, and thus the matter must be

---

[6] Plaintiff argues in its Opposition that the subscription provided exclusive access to certain videos. (Docket No. 43 at 7, n.2). The Court disregards this argument, however, because this claim is not contained in Plaintiff's FAC. Further, the Court is not creating a bright-line, categorical rule requiring that a subscription must provide access to exclusive video content not otherwise available to viewers without a subscription. This is just one factor that the Court considers in addition to the *Ellis* factors, and it is not dispositive or outcome determinative on its own.

dismissed if not adequately alleged.

## IV. CONCLUSION

As the FAC does not sufficiently allege that Plaintiff is a "consumer" as defined under the VPPA, the Court **GRANTS** Defendant's Motion without prejudice and with leave to amend. Plaintiff shall file an amended complaint consistent with this Order within 21 days of its issuance.

**IT IS SO ORDERED.**

Dated: November 27, 2023

HON. WESLEY L. HSU
UNITED STATES DISTRICT JUDGE