UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANKLIN KUZENSKI,<br><br>Plaintiff,<br><br>v.<br><br>UPROXX LLC,<br><br>Defendant. | Case No. 2:23-cv-00945-WLH-AGR<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT [58]** |

Before the Court is Defendant Uproxx LLC's ("Defendant") Motion to Dismiss Plaintiff's Second Amended Complaint ("SAC") (the "Motion") against Plaintiff Franklin Kuzenski ("Plaintiff"), on behalf of himself and all others similarly situated. (Mot. to Dismiss, Docket No. 58). Plaintiff filed his Opposition brief to Defendant's Motion (the "Opposition," Docket No. 60), and Defendant subsequently filed a Reply brief (the "Reply," Docket No. 61). This matter is fully briefed.

On March 12, 2024, the Court found it appropriate to take this matter under submission. While this Motion was pending, on May 24, 2024, Defendant filed a Motion for Summary Judgement seeking to dismiss the SAC in its entirety. (Mot. for Summary Judgment, Docket No. 74). That matter is scheduled for a hearing on June 28, 2024.

1  After considering the parties' submitted evidence, and for the reasons stated
2  below, the Court **GRANTS** Defendant's Motion with prejudice and without leave to
3  amend.  Further, the Court dismisses Defendant's Motion for Summary Judgment as
4  **MOOT**, and the hearing scheduled for June 28, 2024, is **VACATED**.

**I.  BACKGROUND**

The full background and facts of this case are known to the parties and are set forth in the Court's prior order.  (*See* November 27, 2023, Order (the "November 27th Order"), Docket No. 51).  The Court will not repeat them here except as necessary for this Motion.

On November 27, 2023, the Court granted Defendant's Motion to Dismiss Plaintiff's First Amended Complaint ("FAC"), without prejudice and with leave to amend.  (*Id.*).  Specifically, the Court found that Plaintiff's FAC failed to sufficiently allege that Plaintiff is as a "consumer" under the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710.  (*Id.* at 3).  The VPPA defines "consumer" as a "renter, purchaser, or *subscriber* of goods or services from a video tape service provider."  18 U.S.C. § 2710(b)(1) (emphasis added).  Plaintiff alleges that as a *subscriber* of Defendant's website, he was also a consumer under the VPPA.  Because "subscriber" is not defined in the statute, the Court adopted an analytical framework used by many courts in this circuit.  (November 27th Order at 4).  First, the Court applied the Eleventh Circuit's *Ellis* factors, which is a non-exhaustive list of six factors, which, if they exist, are indicative of a "subscriber" relationship: "payment, registration, commitment, delivery, [expressed association,] and/or access to restricted content."  *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1256 (11th Cir. 2015).  Second, the Court considered an additional factor applied by district courts in this circuit, which analyzes the existence of a factual nexus or relationship between the subscription and the allegedly actionable video content.  (November 27th Order at 4) (citing *Tawam v. Feld Ent. Inc.*, 684 F. Supp. 3d 1056, 1061 (S.D. Cal. 2023)).  Notably, the Court held that this factor is not dispositive, but rather is another factor considered in addition to

the *Ellis* factors. (*Id.* at n.6). After applying all factors, the Court found that no more than two of the *Ellis* factors—registration and express association—were adequately alleged in the FAC. (*Id.* at 5). Further, the Court found that Plaintiff failed to sufficiently allege a factual nexus or relationship between the "subscription" and Defendant's allegedly actionable video. (*Id.*).

On December 18, 2024, Plaintiff timely filed his SAC on behalf of himself and others similarly situated, re-alleging a single cause of action under the VPPA. (SAC, Docket No. 54). Relevant to our inquiry, Plaintiff added the following allegations:

> Plaintiff, like many other subscribers of Defendant's Website, provided Defendant with personal information like Plaintiff's full name and email address, while Defendant surreptitiously procured his FID and cookies via Facebook Pixel, in exchange for a subscription to Defendant's Website. (SAC ¶ 22).
>
> …
>
> Video content is most or much or (sic) the reason people visit Defendant's website. For example, when Plaintiff subscribed in September of 2019, he would have encountered a website format like the one shown below…. (SAC ¶ 25).
>
> …
>
> Plaintiff has been a subscriber of Defendant's Website since September 2019, when he signed up by creating a display name and password while providing Defendant with his e-mail address, substantially in the form reflected in the image on page 4 of this Complaint. (SAC ¶ 50).
>
> …
>
> Plaintiff was unable to participate as a subscriber to Defendant's website without providing Defendant with the information Defendant surreptitiously gathered from him as well as the information he provided voluntarily (i.e. email address). (SAC ¶ 59).
>
> …
>
> Plaintiff is a "subscriber" under the VPPA because he:
> a. **Registered** as a subscriber to Defendant's Website by providing

      Defendant with his personal information, including e-mail address;

b. **Committed** to Defendant's then-existing Terms of Use and Privacy Policy by virtue of creating his account, as reflected in the image on page 4.

c. Was **Delivered** pre-recorded video content by Defendant via Defendant's Website.

d. **Expressly Associated** himself with Defendant by creating an account and associated subscriber profile on Defendant's Website, which Defendant referred to as "Join[ing] the Uproxx Community[.]" (SAC ¶74).

On January 26, 2024, Defendant filed the instant Motion arguing, among other things, that Plaintiff's SAC failed to address the deficiencies contained in Plaintiff's FAC, which were the basis for this Court's November 27th Order. (Docket No. 58). On February 19, 2024, Plaintiff filed its Opposition. (Docket No. 60). Subsequently, on March 1, 2024, Defendant filed its Reply. Prior to this Court's Order on this Motion, on May 24, 2024, Defendant filed a Motion for Summary Judgment seeking dismissal of the entire matter. (Docket No. 74).

## II.    LEGAL STANDARD

Under Fed. R. of Civ. P. 12(b)(6), a party may move to dismiss a cause of action for failure to state a claim upon which relief can be granted. A complaint may be dismissed for failure to state a claim for one of two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). To fulfill this requirement, a complaint must meet the notice pleading standards of Rule 8(a). Fed. R. Civ. P. 8(a). That is, a complaint "may not simply recite the elements of a cause of action but must contain sufficient allegations of underlying facts to give fair

notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Rule 8(a), however, "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence." *Twombly*, 550 U.S. at 545. The court must construe the complaint in the light most favorable to the plaintiff, accept all allegations of material fact as true, and draw all reasonable inferences from well-pleaded factual allegations. *Gompper v. VISX, Inc.*, 298 F.3d 893, 896 (9th Cir. 2002). The court is not required to accept as true legal conclusions couched as factual allegations. *See Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

Pursuant to Fed. R. Civ. P. 15(a)(2), courts granting dismissal should freely give leave to amend "when justice so requires." Courts apply this policy with "extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990); *see also Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (holding that dismissal with leave to amend should be granted even if no request to amend was made). Courts consider four factors in determining whether to grant leave to amend: (1) undue delay; (2) bad faith; (3) futility of amendment; and (4) prejudice to the opposing party. *United States v. Webb*, 655 F.2d 977, 980 (9th Cir. 1981) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

**III. DISCUSSION**

    **A. <u>Subscriber Under VPPA</u>**

To bring a claim under the VPPA "a plaintiff must allege that (1) a defendant is a 'video tape service provider,' (2) the defendant disclosed 'personally identifiable information concerning any customer' to 'any person,' (3) the disclosure was made

1  knowingly, and (4) the disclosure was not authorized by section 2710(b)(2)." *Mollett*
2  *v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015). Notably, the VPPA only applies
3  to "consumers" as defined within the VPPA. *See* 18 U.S.C. § 2710(a)(1). The VPPA
4  defines "consumer," as "any renter, purchaser, or *subscriber* of goods or services from
5  a video tape service provider." 18 U.S.C. § 2710(a)(1) (emphasis added). The VPPA,
6  however, does not define "subscriber," and the Ninth Circuit is silent as to its meaning
7  in this statute.

8      Given the lack of controlling caselaw, the Court, in its November 27th Order,
9  adopted an analytical framework based on the Eleventh Circuit's *Ellis* factors. *See*,
10  *e.g.*, *Ellis*, 803 F.3d at 1256. The *Ellis* factors include a non-exhaustive list of six
11  factors, which, if they exist, are indicative of a "subscriber" relationship: "payment,
12  registration, commitment, delivery, [expressed association,] and/or access to restricted
13  content." *Id.* (citation omitted). In addition to the *Ellis* factors, the Court also
14  considered "existence of a factual nexus or relationship between the subscription
15  provided by the defendant and the defendant's allegedly actionable video content."
16  (November 27th Order at 4 (citing *Tawam*, 684 F. Supp. 3d at 1061)).

17      Defendant moves to dismiss Plaintiff's SAC because it again fails to adequately
18  allege that Plaintiff is a "consumer" under the VPPA. (Docket No. 58 at 11–12).
19  Specifically, Defendant contends that Plaintiff alleges at most two of the six *Ellis*
20  factors and fails to allege a factual nexus between the subscription and the allegedly
21  actionable video content. (*Id.*). Further, Defendant argues that Plaintiff fails to allege
22  an adequate factual nexus between the subscription and the allegedly actionable video
23  content. Plaintiff counters that at least four of the six *Ellis* factors—registration,
24  commitment, express association, and delivery—are met, and that he has sufficiently
25  alleged an adequate factual nexus between the subscription and the allegedly
26  actionable video content. The Court disagrees with Plaintiff. As the Court has
27  previously held that the registration and express association factors were sufficiently
28

alleged, the Court will only focus on the commitment and delivery factors under *Ellis* and the factual nexus requirement.

As to the "commitment" factor, Plaintiff alleges that he committed to Defendant by agreeing to "Defendant's then-existing Terms of Use and Privacy Policy ("Use Policy") by virtue of creating his account…." (SAC ¶ 74). Notably, the court in *Ellis* did not explicitly discuss the type of conduct that would satisfy the commitment factors. Instead, the *Ellis* court generally held that "downloading an app for free and using it to view content at no cost is not enough to make a user of the app a 'subscriber' under the VPPA, as there is no ongoing commitment or relationship between the user and the entity which owns and operates the app." *Ellis*, 803 F.3d at 1257. The Court finds that Plaintiff's allegations regarding the "commitment" factor are conclusory and lack any allegations explaining why Defendant's Use Policy would constitute commitment. *See*, *e.g.*, *Carter v. Scripps Networks, LLC*, 670 F. Supp. 3d 90, 99 (S.D.N.Y. 2023) ("The Complaint describes plaintiffs as subscribers of hgtv.com newsletters, but does not plausibly allege that they were subscribers of hgtv.com video services, which are not alleged to entail any commitment from viewers."). For example, Plaintiff does not elaborate on any of the terms or conditions in Defendant's Use Policy or even explain what the alleged "commitment" would entail. In fact, Plaintiff concedes that the videos in question were not exclusive content and could be watched by any viewer without any commitment or obligation to sign up for an account. (Docket No. 60 at 7). Plaintiff further cites no caselaw to support his contention that agreeing to a website's terms and conditions or privacy policy is sufficient to demonstrate a commitment to being a "consumer" or "subscriber" as defined by the VPPA.

Likewise, the Court finds Plaintiff's allegations regarding the "delivery" factor conclusory and lacking supporting caselaw. Plaintiff alleges that the delivery factor is satisfied because Defendant "delivered pre-recorded video content by Defendant via Defendant's Website." (SAC ¶ 74). Posting a video on a website does not, in this

1  Court's view, constitute "delivery" in either the traditional (*i.e.*, mailing) or digital
2  sense (*i.e.*, emailing). Plaintiff, however, does allege that links to the videos were
3  delivered via email. (*See* SAC ¶ 24 ("When someone becomes a subscriber to
4  Defendant's Website, they also receive recurring emails from Defendant with links to
5  articles and videos published to the Website.")). Even assuming, *arguendo*, that
6  emails to links of videos on the website constitute delivery, this factor is either neutral
7  or only weighs somewhat in favor of demonstrating a subscription relationship given
8  the nature of the delivery is of links to videos publicly available on Defendant's
9  website.

Confusingly, Plaintiff argues that the Court has conflated the delivery factor with the exclusive access factor. To support his proposition, Plaintiff cites to a section of the Court's November 27th Order that has nothing to do with the Court's analysis of the delivery factor. (*See* Docket No. 60 at 6–7) (citing Docket No. 51 at 10)). Rather, the Court was addressing the factual nexus factor and Plaintiff's failure to allege any nexus between the links to videos emailed to subscribers and the videos readily accessible on Defendant's website without a subscription. As such, Plaintiff's argument fails, and the Court finds that the delivery factor is not met.

Lastly, Plaintiff's SAC continues to fail to allege a factual nexus or relationship between the subscription (*i.e.*, Website benefits) and Defendant's allegedly actionable video content. *See*, *e.g.*, *Gardener v. MeTV*, 681 F. Supp. 3d 864, 869 (N.D. Ill. 2023) ("The Court does not agree, however, with Plaintiffs' argument that the allegations that [they] opened an account separate and apart from viewing video content on MeTV's website is sufficient to render them 'subscribers' under the Act."); *Carter*, 670 F. Supp. 3d at 99 (stating that "a customer's non-video transactions play no part in a defendant's liability under the VPPA"). Plaintiff largely rehashes the same allegations that Defendant's website is a multimedia site containing videos. Even the new allegations that the "[v]ideo content is most of (sic) much of the reason people visit Defendant's website" is conclusory and unpersuasive. (SAC ¶ 25). Further,

while Plaintiff does allege that subscribers receive an e-mail containing links to videos, this alone is insufficient as the videos are not alleged to be exclusive to subscribers and can be accessed by anyone visiting Defendant's Website. *See*, *e.g.*, *Carter*, 670 F. Supp. 3d at 99 ("[T]he Complaint does not include facts that plausibly allege that [plaintiffs'] status as newsletter subscribers was a condition to accessing the site's videos, or that it enhanced or in any way affected their viewing experience."). As the Court previously found, a link to a video from Defendant's Website does not create a subscription relationship because any user can access the video on the Website. Accordingly, the SAC does not plausibly allege a VPPA claim.

## IV.   CONCLUSION

As the SAC does not sufficiently allege that Plaintiff is a "consumer" as defined under the VPPA, the Court **GRANTS** Defendant's Motion.[1] Because this is Plaintiff's second unsuccessful attempt to amend his complaint, the Court finds that any further amendment would be futile and as such dismisses this matter with prejudice and without leave to amend. Lastly, the Court dismisses Defendant's Motion for Summary Judgment as **MOOT,** and the hearing scheduled for June 28, 2024, is **VACATED**. (Docket No. 74).

**IT IS SO ORDERED.**

Dated:  June 24, 2024

_____
HON. WESLEY L. HSU
UNITED STATES DISTRICT JUDGE

---

[1] The Court declines to address the remainder of Defendant's Motion as the issue of whether Plaintiff is a "consumer" under the VPPA is a dispositive threshold issue.